Sharon **WILLITS**, Plaintiff-Appellant,

v.

W. L. **RICHARDSON** and A. J. O'Donnell, Defendants-Appellees.

No. 73-3163.

United States Court of Appeals, Fifth Circuit.

July 18, 1974.

George D. Gold, Miami, Fla., for plaintiff-appellant.

Mervyn L. Ames, Asst. U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Ann Belanger, Attys., Tax Division, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

CLARK, Circuit Judge:

Sharon Willits sought injunctive relief from a jeopardy seizure of virtually all of her property by the Internal Revenue Service (IRS) pursuant to a quick termination proceeding under 26 U.S.C. § 6851.[1] At the conclusion of an evidentiary hearing on her motion for a preliminary injunction, the district court found the cause to be barred by 26 U.S. C. § 7421(a),[2] which prohibits judicial restraint of tax assessment or collections. The trial court erred procedurally in dismissing the action at this preliminary stage. It also erred substantively in determining the proof adduced failed to show that the seizure procedures utilized by the IRS, although in the guise of a tax, were intended to harass and punish Mrs. Willits for her association with a suspected dealer in

---

1. In pertinent part, this section provides:
   (a) *Income Tax in Jeopardy.*—
   (1) *In general.*—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy. * * *
   (b) *Reopening of Taxable Period.*— * * * A taxable period so terminated by the Secretary or his delegate may be reopened by the taxpayer (other than a nonresident alien) if he files with the Secretary or his delegate a true and accurate return of the items of gross income and of the deductions and credits allowed under this title for such taxable period, together with such other information as the Secretary or his delegate may by regulations prescribe.

2. *Tax.*—Except as provided in sections 6212 (a) and (c), 6213(a), and 7426(a) and (b) (1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

narcotics; and in holding that she had failed to show a basis for equitable relief. We reverse.

The following were the facts as found by the district court:

[O]n May 24, 1973, Officers Mosher and Ahearn of the City of Miami Police Department, while driving in an unmarked vehicle, began pursuing the plaintiff, Sharon Willits, who was driving a 1972 Cadillac in the vicinity of the 79th Street Causeway in Miami. Upon becoming aware that she was being followed by an unmarked car, the plaintiff pulled over to the side of the street momentarily and the unmarked car pulled in behind her. No one emerged from the unmarked car and the plaintiff pulled away from the side of the curb and the unmarked car containing officers Ahearn and Mosher continued following the plaintiff. The plaintiff then pulled over a second time when the unmarked car pulled up beside her and she noticed police badges being waived at her by the occupants of the unmarked car. Officer Ahearn then emerged from the unmarked car and approached the plaintiff. Officer Ahearn was not in uniform and was dressed in very casual clothes. He had a full beard and long frizzled hair which was tied in a ponytail in back. Officer Mosher also emerged from the car and was dressed in a manner similar to that of Officer Ahearn.

Upon identifying himself as a police officer, Officer Ahearn asked the plaintiff for identification, including her driver's license. Officer Ahearn asked the plaintiff if the address shown on the license was correct and the plaintiff responded that she could not or would not disclose her correct residential address. The address appearing on the driver's license appeared to be in Broward County and the plaintiff was arrested in Dade County. Registration of the automobile which the plaintiff was driving showed that the car was registered in the name of an individual other than the plaintiff and the plaintiff explained that she was using the car with his permission. A check was made on the registration through the police radio and the officers found that the address on the registration did not exist. It was later found that there had been a typographical error in making out the registration and the car was released to the registered owner.

Approximately six weeks prior to May 24, 1973, Officer Ahearn had stopped a vehicle containing the plaintiff and a Mr. Rick Cravero. The plaintiff was also driving that vehicle when it was stopped and her license was checked by Officer Ahearn. Mr. Cravero had been under surveillance by the City of Miami Police Department for approximately five months in that he was suspected of dealing in narcotics. Neither the plaintiff nor Mr. Cravero were arrested by Officer Ahearn on that occasion. Inasmuch as the plaintiff was unable to give Officer Ahearn a specific address for her residence, she was arrested for speeding and was taken by Officers Ahearn and Mosher to the police station some seventy blocks distant. The time of this arrest was approximately 7:30 p. m. on May 24, 1973. The plaintiff was not taken to the traffic section of the police department but was taken to the narcotics section. Officers Ahearn and Mosher were not assigned to traffic detail but were assigned at the time of this arrest to the narcotics section and took the plaintiff to their office. Upon arriving at their office, the plaintiff was requested to open her purse and at that time a pistol was observed. The plaintiff did not display a permit for carrying this weapon and she was thereafter placed under arrest by Officer Ahearn for carrying a concealed weapon and was advised of her constitutional rights at this time. A more thorough search was then made of her purse and certain tablets were discovered. These tablets were not placed

in evidence although there was testimony from one witness that the tablets were subjected to chemical analysis and were found to be barbiturates. Plaintiff claimed at the time that these barbiturates had been purchased pursuant to a prescription she had received from a doctor. No additional evidence on that point was submitted by plaintiff. The search of plaintiff's purse also revealed an envelope containing some slips of paper and approximately $4,400.00 in cash and a gold coin and another small piece of jewelry. Plaintiff was wearing some diamond rings and these were also surrendered to the police by the plaintiff at the request of the police. The plaintiff was then taken to another section of the police station and was charged with possession of narcotic drugs, unlawfully carrying a concealed weapon and speeding. She was released later that night on $2,000.00 bond which was posted by a friend.

On the morning of May 25, 1973, Officer Ahearn advised Mr. John Zahurak of the United States Internal Revenue Service that Mrs. Willits had been arrested and advised him of the charge of possession of narcotics placed against her. Mr. Zahurak on that day went over to the City of Miami Police Department and viewed the police report prepared on the arrest of the plaintiff and the description of the materials taken from her purse. Mr. Zahurak was also advised by representatives of the City of Miami Police Department that the plaintiff was an associate of several persons who were suspected of dealing in narcotics. Mr. Zahurak was advised by Officer Ahearn that the sum of $4,400.00 had been taken from Mrs. Willits' purse and that the sum was in a white envelope which contained a slip of paper with some names and figures on it. He further advised Mr. Zahurak that Mrs. Willits had told him that she was not employed. Mr. Zahurak testified that he then checked to seek whether Mrs. Willits had filed an income tax return for the years 1969, 1970, 1971 and 1972, and the information he received was that no return had been filed by Mrs. Willits for those years. Although the police report indicated that only a few pills contained in two vials had been found in Mrs. Willits' purse, Mr. Zahurak computed that Mrs. Willits had earned commission income of $60,000.00 on sales of $240,000.00 worth of cocaine during 1973 and recommended to his superiors that Mrs. Willits' taxable period for the period from January 1, 1973, through May 23, 1973, be terminated and that a tax be demanded and if necessary assessed against Mrs. Willits for that period in the amount of $25,549.00. Also on May 25, 1973, Officer Zahurak caused an administrative summons to be issued to the City of Miami Police Department for the property which had been taken from Mrs. Willits' purse and person.

On May 25, 1973, at approximately 3:20 p. m., a notice was sent to Mrs. Willits by certified mail from the District Director of Internal Revenue Service in Jacksonville, Florida, advising her that her taxable period from January 1, 1973 through May 23, 1973, had been terminated and that there was a tax due and payable from her for that period of $25,549.00. Mrs. Willits was further advised in that letter that any unpaid portion of the tax would be assessed against her and that administrative or judicial action to collect the assessment would be taken immediately. On May 25, 1973, an assessment in the amount of $25,549.00 for Federal income taxes for the terminated period was made against Mrs. Willits. On May 30, 1973, Revenue Officer Vincent Bernola served a notice of levy and a notice of seizure upon the City of Miami Police Department seeking the property of the plaintiff, Sharon Willits, in their possession.

The plaintiff, Sharon Willits, was divorced from her husband, Kenneth E. Willits, in June 1972. Pursuant to

the terms of that divorce, Sharon Willits received $67.50 alimony per week and child support for her two children of $67.50 per week. The plaintiff received the alimony for five months and thereafter received a settlement of $400.00 and no further alimony. The child support has continued. Pursuant to the divorce, plaintiff also received the residence in which she had lived while married which was sold in the Spring of 1973 for $2,000.-00 cash with the purchaser assuming the mortgage. Plaintiff had no other funds or substantial property at the time of her divorce. During 1973 and for an unspecified period in 1972 the plaintiff has been supported either by Mr. Rick Cravero or by winnings from gambling and all money and property which she has received during that period derived from one of these two sources—she testified that the jewelry and money in suit were provided by Cravero. No evidence was introduced which would tend to show that she will not continue to be supported by Mr. Cravero.

Based upon these fact findings, the district court concluded that without regard to the legality of Mrs. Willits' arrest or the legality of the initial police search and seizure of her property, she had failed to show that under the most liberal view of the law and facts the government could not ultimately prevail on its claim. The court further concluded that Mrs. Willits failed to establish that the immediate recovery of her property was necessary to prevent irreparable injury because she did not negate that Mr. Cravero would support her in the future. In addition, the court determined that Mrs. Willits had an adequate remedy at law consisting of the right to file a return for the calendar year of 1973 and seek a refund in the district court or a redetermination of her tax liability in the Tax Court. Since these conclusions established that Mrs. Willits' action was barred by the tax anti-injunction statute, Section 7421(a), under the tests laid down in Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the court dismissed the complaint.

## PROCEDURE

At the hearing on the preliminary injunction the district court inquired of counsel for both parties if it could be stipulated that the hearing then held could be converted into a final hearing on the issues at controversy in the litigation. Counsel for plaintiff declined to so stipulate, stating to the court that a witness whose testimony was considered essential to his case was unavailable at that time. There was no showing or suggestion that this witness would not in fact give testimony that was material to Mrs. Willits' case. Thus, no issue as to the prejudice to plaintiff's case remains. Cf. Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096 (5th Cir. 1972); Nationwide Amusements, Inc. v. Nattin, 452 F.2d 651 (5th Cir. 1971). The court entered no order of consolidation under Fed.R.Civ. P. 65(a)(2). See C. Wright & A. Miller, Federal Practice and Procedure, § 2950, at 486–88. Construing the evidence adduced in the court below most favorably to the plaintiff, as we must on reviewing a dismissal at a preliminary stage such as this, we cannot find the dismissal authorized.

## SUBSTANCE

Indeed, the evidence adduced established such a gossamer basis for the drastic actions of the Internal Revenue Service that they cannot be sustained. The proof showed that the taxes assessed were based solely upon income which was attributed to Mrs. Willits as a commission to her from the sale of six kilos of illicitly imported cocaine. Agent Zahurak testified without dispute that the sole source for connecting Mrs. Willits at all with income from the importation or sale of any cocaine was Police Officer Ahearn. Yet, he further so testified that Ahearn did *not* tell him that Mrs. Willits had ever dealt with the

speculative six kilos or more or less cocaine or with the sale or distribution of any other narcotic. No basis in fact nor foundation for any reasonable assumption was demonstrated in this record that Mrs. Willits was connected with the smuggling or sale of this or any other amount of cocaine or narcotics. Agent Zahurak testified that the IRS computed the amount of Mrs. Willits' commission by supposing that she received a commission of at least 25% of an assumed sales price of 40,000 dollars per kilo for the putative six kilos of cocaine. This commission was arbitrarily selected by Agent Zahurak as a "conservative figure" of what Mrs. Willits would collect *if* she had participated in such a cocaine sale based upon a notation on the back of a scrap of paper that Officer Ahearn found in her purse. The notation reads:

| | | |
|------|---|------|
| Ceon | – | 3000 |
| Ron  |   | 1500 |
| Slt  | – | 2000 |
| P    |   | 500  |
| C    |   | 400  |
| ME   |   | 5900 |

The revenue agent presumed this record showed a list of persons with dollar amounts after their names and added to this supposition the further speculation that the notation related to the division of income from a typical drug sale. He furthermore assumed that "ME" referred to Mrs. Willits and, pyramiding all these guesses, concluded that her commission on the theoretical transaction would have amounted to 44%.

Agent Zahurak testified that he was assigned to the Narcotics Project Division of the Internal Revenue Service—a division he described as working exclusively with cases involving persons dealing in or using narcotics. While the overall purposes and procedures of the IRS's Narcotics Project were not spelled out in this record, it is transparently obvious that the action taken as to Mrs. Willits does not represent an isolated instance wherein police information was utilized by the Internal Revenue Service to protect the public fisc. Rather, this record clearly establishes that a seizure pursuant to the quick termination provisions of Section 6851—a procedure which according to the contention of the IRS has the harshest possible notice and correction consequences for the purported taxpayer—was instantly clamped upon every meaningful asset of Mrs. Willits, based upon scanty and largely inaccurate information[3] which, at best, amounted to nothing more than a vague suspicion that she must have come by her jewelry and cash by improper means since she admitted that she gambled for a living and was being kept by a man who police believed was dealing in narcotics.

This court's recent en banc decision in Lucia v. United States, 474 F.2d 565, 573 (5 Cir. 1973), provides a succinct standard for appellate determination of the *Enochs* issue in the case at bar:

> Following Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), this Court holds that a taxpayer under a jeopardy assessment is entitled to an injunction against collection of the tax if the Internal Revenue Service's assessment is entirely excessive, arbitrary, capricious, and without factual foundation, and equity jurisdiction otherwise exists.

The proof made on the preliminary injunction established that the sole basis for the seizure of Mrs. Willits' property was the altogether fictitious

---

3. Zahurak was initially advised that Mrs. Willits had 2 grams of heroin and 2 grams of cocaine in her possession at the time she was arrested. Though the proof on the preliminary injunction hearing was not free from some minor contradictions, it did show that this information was totally erroneous and that at the time of her arrest and the seizure of her property, the only drugs possessed by Mrs. Willits were 4 tablets her testimony established to be medication (Desbutal) which had been prescribed for her by a doctor whose name she gave. As the district court found, the police laboratory determined these pills to be barbiturates.

assessment which Agent Zahurak implemented on the basis of Officer Ahearn's speculations. Furthermore, Mrs. Willits alleged, and the proof she adduced tended to show, that the seizure was sufficiently extensive to deny her all means of supporting herself and her children. The district court's assumption that Mr. Cravero, who owed her no legal duty of support whatsoever, would continue voluntarily to furnish the necessities of life to Mrs. Willits cannot mitigate the financial ruin inflicted upon her by this seizure.

If the IRS is correct in its contention that no notice of deficiency is required in a Section 6851 termination procedure, the best formalisms of a refund suit or a petition for redetermination would take many months to process. The more probable prospect is that, regardless of the lack of merit in the original assessment, more than a year could be consumed before her property was freed. For one in Mrs. Willits' circumstances, this does not constitute an adequate remedy at law for such an extensive seizure.

The IRS has been given broad power to take possession of the property of citizens by summary means that ignore many basic tenets of pre-seizure due process in order to prevent the loss of tax revenues. Courts cannot allow these expedients to be turned on citizens suspected of wrongdoing—not as tax collection devices but as summary punishment to supplement or complement regular criminal procedures. The fact that they are cloaked in the garb of a tax collection and applied only by the Narcotics Project to those believed to be engaged in or associated with the narcotics trade must not bootstrap judicial approval of such use.

The plaintiff has urged us to hold that the illegality of Mrs. Willits' arrest vitiated the subsequent tax proceedings against her; and further that quick termination proceedings under Section 6851 necessitate a deficiency notice in accordance with Section 6212(a).[4] We ex-

4. This is an issue which is the subject of extensive litigation with thus far varying results in the several circuits that have addressed the problem.

The Second and Seventh Circuits have held that an assessment made under Section 6851 and Section 6201 is not a "deficiency" within the purview of Section 6211 for which Section 6212(a) mandates that notice issue. *See* Laing v. United States, 496 F.2d 853 (2d Cir. 1974), aff'g 364 F.Supp. 469 (D.Vt.1973), petition for cert. filed, 42 U.S.L.W. 3679 (U.S. May 31, 1974) (No. 73–1808) ; Chapman v. IRS, 487 F.2d 1393 (2d Cir. 1973) (decision without opinion), aff'g 32 Am.Fed.Tax R.2d 5027 (S.D.N.Y.) ; Irving v. Gray, 479 F.2d 20 (2d Cir. 1973) ; Williamson v. United States, 31 Am.Fed. Tax R.2d 800 (7th Cir. 1971). Concluding that a tax declared under Section 6851 is a deficiency within the ambit of Sections 6211 and 6861, the Sixth Circuit recently reached the contrary result. Rambo v. United States, 492 F.2d 1060 (6th Cir. 1974) ; Hall v. United States, 493 F.2d 1211 (6th Cir. 1974). This issue may have been involved, sub silentio, in Lewis v. Sandler, 498 F.2d 395 (4th Cir. 1974). Currently, a number of appeals raising the question are pending in this court as well as in the Third, Fourth and Ninth Circuits. *See* Boyd v. United States, (E.D.Pa.1974) (notice of deficiency not required), appeal docketed, No. 74–1565, 3d Cir., June 10, 1974 ; Schreck v. United States, 301 F.Supp. 1265 (D.Md.1969) (notice of deficiency required), reaff'd on recon., 375 F.Supp. 742 (D.Md.1973) [33 Am. Fed.Tax R.2d 749 Dec. 19, 1973], appeal docketed, No. 74–1566, 4th Cir., May 16, 1974 ; Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex. 1972) (deficiency notice required), appeal docketed, No. 73–2147, 5th Cir., argued Dec. 4, 1973 ; Aguilar v. United States, 359 F. Supp. 269 (S.D.Tex.1973), appeal docketed, No. 73–2454, 5th Cir., argued Dec. 4, 1973 ; Rodger v. United States, (S.D.Fla.1974) (deficiency notice not required) [#73–705–CIV–CA Jan. 29, 1974], appeal docketed. No. 74–1723, 5th Cir., Mar. 18, 1974 ; Rogers v. O'Donnell, (M.D.Fla.1974) (deficiency notice required) [#72–246–ORL–CIV Mar. 5, 1974], appeal docketed, No. 74–1731, 5th Cir., Apr. 18, 1974 ; Lisner v. McCanless, 356 F.Supp. 398 (D.Ariz.1973) (deficiency notice required), appeal docketed, Nos. 73–2037 & 73–2038, 9th Cir., June 8, 1973 ; Woods v. McKeever, (D.Ariz.1973) (deficiency notice required) [32 Am.Fed.Tax R. 2d 5967 Oct. 16, 1973], appeal docketed, No. 74–1133, 9th Cir., Jan. 25, 1974 ; Williams v. United States, 373 F.Supp. 71 (D.Nev.1973) (deficiency notice required) [33 Am.Fed.Tax R.2d 467 Nov. 16, 1973], appeal docketed, No. 74–1192, 9th Cir., Feb. 4, 1974 ; Avery

pressly decline to reach either of these contentions.

We reverse the district court's action in dismissing this cause and remand for further proceedings. Ordinarily, the prerogative to weigh nice distinctions as to whether injunctive relief should be granted belongs to the district court, *see* Sargent v. Genesco, Inc., 492 F.2d 750, 770 (5th Cir. 1974); however, if neither party should offer additional proof in the court below, plaintiff is clearly entitled to injunctive relief upon the record made.

Reversed and remanded.

v. Sparley, (E.D.Wash.1973) (deficiency notice required) [Civ. #3860 Nov. 16, 1973], appeal docketed, No. 74–1625, 9th Cir., Apr. 10, 1974; Shaw v. McKeever, (D.Ariz.1974) (deficiency notice required) [33 Am.Fed.Tax R.2d 1213 Mar. 22, 1974], appeal docketed, No. 74–2416, 9th Cir. [notice of appeal filed May 17, 1974]; *see also* Musso v. Commissioner, 32 CCH Tax Ct.Mem. 849 (1973) (Section 6212 notice of deficiency prerequisite to Tax Court jurisdiction to redetermine taxes assessed after Section 6851 termination), appeal docketed, No. 73–3916, 5th Cir., Dec. 12, 1973.