**Roberto Flores AGUILAR, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 73-2454.**

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1974.

**128**

Francis P. Maher, Laredo, Tex., Robert A. Maher, Chicago, Ill., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., Lee H. Henkel, Jr. Act. Chief Counsel, IRS, Washington, D. C., James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., Karl Schmeidler, Gary R. Allen, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The IRS terminated appellant's "tax period", pursuant to § 6851 of the Code assessed a tax of $12,774.00 and levied on a truck belonging to appellant and $11,270.00 in cash discovered in the truck without issuing a notice of deficiency under § 6861(b).[1] Disposition is controlled by the two recent decisions of Clark v. Campbell, 5 Cir., 1974, 501 F.2d 108, this day decided and Willits v. Richardson, 5 Cir., 1974, 497 F.2d 240. *Campbell* holds that § 6213(a)[2] entitles a § 6851 quick termination taxpayer to an injunction against the assessment and collection of the alleged tax due when the IRS fails to issue a deficiency notice within 60 days. *Willits* holds that on the showing of a kind here made out taxpayer is at least entitled to prove that the action of the IRS in conjunction with drug enforcement authorities demonstrated the assessment to be arbitrary and capricious. We reverse the District Court's dismissal of his action and remand for further proceedings not inconsistent with these opinions.

---

1. 26 U.S.C.A. § 6861:
   (b) *Deficiency letters.*—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment.

2. 26 U.S.C.A. § 6213. *Restrictions applicable to deficiencies; petition to Tax Court*
   (a) *Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

■ Appellant is a citizen and resident of Mexico.[3] He owns a trucking business which he operates exclusively in the Republic of Mexico. He did at of his business in Mexico and was not a taxpayer[4] within the meaning of the Code, had no duty to file a return and had no income subject to taxation by the United States.[5]

On July 27, 1972, appellant's employees were on their way in one of his trucks to San Antonio, Texas to obtain automotive parts with the cash which was later discovered, but had turned back after encountering engine trouble. The truck was stopped by local police in Laredo, Texas for a title check. The police found a discrepancy in the identification number. Upon examination of the vehicle they discovered $11,270.00 in United States currency in a sack in the driver's compartment. The police seized the truck and the two employees proceeded back to Mexico on foot.

The Laredo police notified the United States Customs Bureau of their discovery and that Bureau immediately placed a "hold" on the truck based on a "suspicion" that it was involved in illicit narcotics activity. When the Laredo police refused to return the cash found in the truck to appellant, appellant brought suit in the state court. The cash was promptly deposited in the registry of that court.

On August 3, 1972, the IRS made a § 6851 quick termination of his tax period and sent the usual letter to appellant terminating his tax year, and informing him that a tax of $12,774.00 had been assessed and was immediately due and payable. The IRS served a notice of levy on the state court which was holding the funds. Appellant's truck was seized and sold by the IRS for $750.00.

Despite persistent efforts by appellant, the IRS flatly refused to disclose its theory of computation of the alleged tax maintaining that appellant could obtain an opportunity to examine and challenge the assessment and levy by filing a full year return alleging an overpayment (which would be treated as a claim for refund) and then filing suit for a refund in the District Court in six months.

Unsatisfied with that, appellant, in December 1972, filed suit in the District Court seeking to enjoin the IRS from enforcing its assessment and levy on the funds in the state court registry and to obtain the proceeds from the sale of the truck. Appellant relied primarily on the *Nut Margarine*[6] exception to § 7421—the anti-injunction provision of the Code in seeking equitable relief.

The District Court dismissed the suit for a lack of jurisdiction finding that appellant did not satisfy the *Enochs* requirement because he had an adequate remedy in the form of a petition for redetermination in the Tax Court or a refund suit in the District Court.

■ The Tax Court is out since IRS, following its determined practice in § 6851 quick terminations, did not send a deficiency notice which is the "ticket to the Tax Court"[7] or more accurately, the key to the Tax Court door since its

---

3. These recitations are written as though they were proved in fact since the Court had to accept them under the Government's motion to dismiss the Federal Court injunction complaint.

4. 26 U.S.C.A. § 7701(a)(14):
   The term "taxpayer" means any person subject to any internal revenue tax.

5. See 26 U.S.C.A. §§ 871, 881 and 882.

6. Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. As refined in Enochs v. Williams Packing & Nav. Co., 1962, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292, 296–297, in order to obtain an injunction the taxpayer must show (1) "under the most liberal view of the law and facts, the United States cannot establish its claim" and (2) "equity jurisdiction otherwise exists"—that is there is irreparable injury and no adequate remedy at law.

7. Corbett v. Frank, 9 Cir., 1961, 293 F.2d 501, 502. See also Mason v. Commissioner of Internal Revenue, 5 Cir., 1954, 210 F.2d 388.

jurisdiction rests on the deficiency notice.[8]

■ We do not here have to analyze the availability or relative adequacy of the post-payment tax refund route which we did in *Campbell*. For we held in *Campbell* that the deficiency notice is required for a § 6851 quick termination taxpayer just as it is for a § 6861 jeopardy taxpayer. Since *Campbell* was decided long after the action of the District Court below the minimum required would be to reverse and remand for reconsideration in the light of *Campbell*. Such circuity is not plausible in this old case so we simply direct the injunction based on *Campbell*.

■ But since the District Court's dismissal cannot stand in the face of *Willits*, we remand for proceedings consistent with it in the event a necessity[9] arises.

8. See §§ 6214, 7442. See also § 6861.

9. The lists are narrowing with the forces equally divided. The Second and Seventh Circuits against, the Sixth and the Fifth for mandatory deficiency notice. The national answer depends on certiorari. See *Campbell, supra,* note 1.

10. In Rinieri v. Scanlon, S.D.N.Y., 1966, 254 F.Supp. 469, four years after the § 6851 quick termination the taxpayer successfully prevailed on a motion for summary judgment in the District Court in his refund suit to recover the currency seized. In entering judgment for taxpayer the District Judge observed:

The Revenue Agent testified in substance that he did not know whether Mr. Rinieri earned any money here; that his only information was that Rinieri was found with the money at the airport and that Rinieri refused to answer certain questions; that he was instructed to prepare a return showing a tax of approximately $247,500 due and he therefore did so; and that the $53,100 cost-of-living income figure was a pure fiction constructed in order to make the tax due come out close to $247,500, the amount found in plaintiff's possession. The agent testified in addition that he knew of no further information in the files of IRS, other than that already stated, pertaining to the earning of the money in this country by Mr. Rinieri.

    \*     \*     \*     \*     \*

The sum and substance of the situation is this, then: While pointing to not one

On the face of the record (see note 3, *supra*) a non-resident alien who has no income from any sources in the United States whose truck and money are geographically within the United States for the purpose of purchasing legitimate commercial supplies, has money and truck taken peremptorily from him at the instance of drug law enforcers with no more than a vague suggestion that the Government "suspected" that these strangers were trafficking in drugs. Adding to the mystery of the basis for that "suspicion" is the total—the word is total—lack of any basis for computing the quick terminated tax to be $12,774.-00—almost the precise total of the money and the value of the truck—a pattern followed often in the contemporary practice[10] where tax mechanisms are employed "not as tax collection devices but as summary punishment to supple-

iota of proof that any of this money was earned within the United States, although approximately 46 months for investigation have passed since the money was seized, the government contends that a jury would be entitled to disbelieve the plaintiff's story. With this argument I must emphatically disagree.
254 F.Supp. at 472–473.

In United States v. Bonaguro, E.D.N.Y., 1968, 294 F.Supp. 750, aff'd sub nom. United States v. Dono, 2 Cir., 428 F.2d 204, cert. denied sub nom., Bonaguro v. United States, 1970, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed. 2d 59, the District Judge stated:

The critical defect in the Government's position in the instant case is that it has failed to show that it took the formal steps under the statute at all, that it made even internally the findings and declaration required under Section 6851(a), or entertained the belief required by Section 6861(a), or adverted to any data that could induce a reasonable belief that a tax of $1,617.50 was in jeopardy, or filed an involuntary return which was both consistent with the data it had and free of intrinsic repugnancy. The inference is—in short—that it had not acted under the statute to protect the revenue interest and collect a tax that seemed to be in jeopardy, but had made a merely colorable use of the statutory forms at the suggestion of another agency of government in accordance with a pattern of conduct that is not strange to the courts.
294 F.Supp. at 753–754.

ment or complement regular criminal procedures", *Willits*, 497 F.2d at 246.

As did the Court in *Willits*, we hold that this alien taxpayer was entitled on this showing to a factual determination whether the conduct of the tax authorities, alone or in combine with others, transgressed the *Willits* line of impermissible expedients which "—Courts cannot allow . . . to be turned on citizens suspected of wrongdoing". *Willits*, 497 F.2d at 246.

Reversed and remanded.