Ricky A. HENDERSON and Rita L. Henderson, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 3:95–CV–1425–T.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 9, 1996.

474

Raymond Eugene McCain, Jr., Law Office of Rod Norville, Houston, TX, for Plaintiffs.

Mary C. Vance, Kerry Lawson Pedigo, U.S. Department of Justice, Tax Division, Dallas, TX, for Defendant.

### ORDER SETTING ASIDE JEOPARDY LEVY

MALONEY, District Judge.

On December 1, 1995, the Court conducted a hearing on Plaintiffs' Complaint to Set Aside Jeopardy Levy. After considering the complaint, the evidence and argument presented at the hearing on the complaint, and the briefs submitted by the parties, the Court is of the opinion that the jeopardy levy should be set aside.

Between 1990 and 1994, Plaintiff Ricky Henderson was targeted by the Organized Crime Division of the Austin Police Depart-ment as a suspected promoter of prostitution. According to Austin Police Officer Richard McFadin, Henderson was arrested, twice by the Austin Police Department for aggravated promotion of prostitution. Henderson subsequently pleaded guilty to promotion of prostitution, a misdemeanor.

On July 19, 1994, the Austin Police Department searched the Hendersons' home pursuant to a warrant and seized $446,829 in cash and numerous business records. The government contends that the business records relate to nude modeling and massage parlor businesses operated by the Hendersons.

Agents of the Criminal Investigation Division of the Internal Revenue Service (CID) were present at the search of the Hendersons' home. McFadin testified that although state authorities executed the search warrant, the investigation of the Hendersons and the seized funds were turned over to the CID. McFadin also testified that the Austin Police Department desired CID's involvement because of the CID's experience with money laundering cases and because it was the policy of the federal authorities to distribute 80% of the seized assets to the seizing agency whereas the state authorities would only distribute 50% to the seizing agency.

After review, CID attorneys decided that there was insufficient evidence to support an action against the Hendersons for forfeiture because of money laundering. The CID released the case to the civil division of the IRS.

On January 21, 1995, IRS examiner James Harris was notified of the existence of records in the custody of the Austin Police Department bearing on income and employment tax liabilities of the Hendersons. Harris was directed to examine the records to determine if there were federal tax liabilities relating to the records that had not been satisfied.

Harris stated in his affidavit that he was informed that the police seized approximately $500,000 from the Hendersons. He further stated that he was told that the Hendersons were in the business of prostitution, and that they could file a claim with the Court to have

their money and records returned to them. Shortly thereafter, Harris determined that the Hendersons owed just over $500,000 in back employment taxes and penalties.

After determining that the Hendersons owed back taxes and penalties, the IRS determined that the collection of the back taxes was in jeopardy. Harris states in his affidavit that this determination was based on the fact that the Hendersons had over $400,000 in cash in their home; that the money smelled "musty" as if it had been buried; that the Hendersons traveled out of the country; that the Austin Vice Unit informed them that they intended to shut down their business; and that the Hendersons were facing criminal charges with the accompanying legal expenses and possible fines. Subsequently, the Hendersons were notified that the seized funds were subject to a jeopardy levy.

On July 11, 1995, the Hendersons filed this action to set aside the jeopardy levy pursuant to 26 U.S.C. 7429(b)(2). The Hendersons claim that the jeopardy levy is unreasonable under the circumstances of this case, and should be set aside.

If the IRS determines that the collection of a tax deficiency is in jeopardy, it may issue a jeopardy levy. 26 U.S.C. § 6331(a). A jeopardy levy includes the power to seize by any means the property of a taxpayer to satisfy a tax deficiency. 26 U.S.C. § 6331(b).

After exhausting administrative remedies, a taxpayer may request judicial review of the jeopardy determination. 26 U.S.C. § 7429(b). The Court shall determine whether the jeopardy levy is reasonable under the circumstances. 26 U.S.C. § 7429(b)(3)(B). The burden of proof is on the government to demonstrate that the levy is reasonable. 26 U.S.C. § 7429(g)(1). If the government fails to demonstrate that the levy is reasonable, the Court may order the levy released. 26 U.S.C. § 7429(b)(4). The determination made by the Court is final and conclusive and not reviewable by any other court. 26 U.S.C. § 7429(f).

■ A jeopardy levy is reasonably taken against a taxpayer whom the IRS has determined to be deficient in payment of taxes if: (1) the taxpayer is or appears to be designing quickly to depart from the United States; (2) the taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or (3) if the taxpayer is in danger of becoming insolvent. *Harvey v. United States,* 730 F.Supp. 1097, 1105 (S.D.Fla.1990). However, the Court should also be mindful of the extraordinary nature of a jeopardy levy, which is designed to be "used sparingly." *Lindholm v. United States,* 808 F.Supp. 3, 4 (D.D.C.1992); *George F. Harding Museum v. United States,* 674 F.Supp. 1323, 1326 (N.D.Ill.1987); *see also Clark v. Campbell,* 501 F.2d 108, 122 (5th Cir.1974) (noting the effects of the "potentially devastating summary power" of a jeopardy determination).

■ To justify the reasonableness of the jeopardy levy, Harris first states that the Hendersons possessed over $400,000 dollars in cash which "smelled musty." The government argues that this fact alone is sufficient to justify the jeopardy levy because it demonstrates that the Hendersons were hoarding money.

■ Although possession of large amounts of cash may be relevant to the determination of whether the Hendersons were placing their property beyond the reach of the government, *Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Penn.1977), this fact alone is not dispositive. *Guerra v. United States,* 645 F.Supp. 775 (C.D.Cal.1986) (although raising an inference of illegal activity, finding $167,000 in cash seized during drug raid that was concealed in ceiling did not justify jeopardy determination). The critical inquiry is whether the Hendersons appeared to be designing quickly to place their assets beyond the reach of the government or that the collection was otherwise in jeopardy. *Harvey,* 730 F.Supp. at 1105.

At the hearing, Rita Henderson testified that she had been diligently saving money over a period of 10 to 15 years. She also testified that, although she utilized banks in a limited manner to conduct her business af-

fairs, she did not trust banks to secure her personal savings. *See Guerra,* 645 F.Supp. at 783 (distrust for banks not irrational nor illegal). Officer McFadin testified for the government that the musty smell of the money indicated that it had been stored for a long period, which supports Rita Henderson's testimony.

■ The government also asserts that the potential criminal prosecution of Ricky Henderson by the Austin Police justifies the jeopardy levy. The government argues that the potential fines and legal fees that would follow such prosecution place the collection of the assessed taxes at risk. However, unless the potential fines and legal fees are large enough to jeopardize collection, the seizure of $450,000 is unreasonable on this basis.

There is no evidence before the Court that would indicate the severity of the potential fines Ricky Henderson faced or the amount of the legal fees he would likely expend. In fact, the only evidence before the Court regarding the potential criminal charges indicates Ricky Henderson once pleaded guilty to a state law misdemeanor offense, and that the CID considered the evidence against the Hendersons insufficient to support a conviction for money laundering. Considering the evidence presented, the Court cannot conclude that the fines and legal fees faced by Henderson justify the jeopardy determination.

■ The government also presents evidence that the Austin Police represented to the IRS that some of the Hendersons' businesses were to be closed. However, there is no evidence before the Court that the closure of some of his businesses would imperil the Hendersons' financial solvency. *Harvey,* 730 F.Supp. at 1105. Further, nothing in the record indicates that the Hendersons' Dallas businesses were in danger of closure.

Although the issue of the validity of the taxes owed is not before the Court, *Loretto,* 440 F.Supp. at 1173–74, the context in which the tax liability was determined is relevant to the issue of whether collection of the assessment was in jeopardy in this case.

Rita Henderson testified that she was not aware that they might be liable for the em- ployment taxes assessed by the IRS until after the IRS informed the Hendersons of the jeopardy levy. This occurred after the CID determined that there was insufficient evidence to support a criminal seizure action because of money laundering. It is at least coincidental that the IRS determined that the amount of employment taxes due slightly exceeded the amount of assets seized by the CID. *See Aguilar v. United States,* 501 F.2d 127, 130 (5th Cir.1974) (noting that § 6851 quick termination tax determined by IRS to be almost the precise total of the value of the assets seized by local authorities was a "pattern followed often in contemporary practice"); *Kabbaby v. Richardson,* 520 F.2d 334, 335 (5th Cir.1975) (extrapolation of taxes to match amount of assets seized in arrest involving cocaine represents a "pattern we have seen too often recently"). Absent demonstrating an unwillingness or inability on the part of the Hendersons to pay taxes that they owe, the tax deficiency is not in "jeopardy," and normal collection procedures should not be circumvented. *See Willits v. Richardson,* 497 F.2d 240, 246 (5th Cir.1974).

Contrary to the position of the government, the evidence indicates that the Hendersons have attempted to pay all federal and state taxes owed by them. For example, in 1994, the evidence indicates that the Hendersons paid tax on earnings from their businesses in excess of $100,000. Further, the Hendersons have a history of overpaying taxes. The Hendersons filed numerous sales tax returns and paid sales taxes that were subsequently determined, after an audit, not to be owed by them. All of the sales taxes paid by the Hendersons were refunded. Although the government argues that the Hendersons have engaged in illegal activities, they appear willing to comply with their tax obligations.

As a final matter, the government argues that Rita Henderson admitted that part of the reason she kept large amounts of cash in her home was to conceal assets from a judgment creditor. However, there is no evidence before the Court that the government knew this at the time it was decided that the jeopardy levy was necessary. Indeed, the affidavit of Harris, the officer who deter-

mined the collection was in jeopardy, does not list this reason.

The government argues that the Court may consider evidence discovered by the IRS after the jeopardy levy was issued to justify its reasonableness. In support of this proposition, the government relies upon *Loretto*. However, *Loretto* dealt with the reasonableness of a jeopardy assessment and not a jeopardy levy. *Loretto*, 440 F.Supp. at 1173–74.

■ As the government points out in its brief, "A jeopardy levy is a collection device which is separate and distinct from the assessment process." *Shaw v. U.S.*, 20 F.3d 182 (5th Cir.1994); *Miller v. U.S.*, 763 F.Supp. 1534, 1543 (N.D.Cal.1991). The assessment process deals with the decision to impose tax liability, while the jeopardy levy deals with the collection of taxes allegedly owed. *Shaw*, 20 F.3d at 184. This distinction is an important one.

■ The term levy includes the power of seizure by any means. 26 U.S.C. § 6331(b). After a levy has been issued, the government may "seize and sell such property or rights to such property." *Id.* As such, a jeopardy levy is a seizure which implicates values protected by the Fourth Amendment. In contrast, a jeopardy assessment is merely a determination that taxes are due, and allows the IRS to demand payment. 26 U.S.C. § 6861(a). Demanding the payment of taxes is different from actually seizing a taxpayer's assets.

■ The Fourth Amendment mandates that citizens shall be free from unreasonable search and seizure. The reasonableness of a seizure is determined by an objective examination the facts known to the government agent at the time the liberty-restricting action is taken. *See U.S. v. Ullrich*, 580 F.2d 765, 769 (5th Cir.1978); *U.S. v. Estrada*, 526 F.2d 357, 358 (5th Cir.1976). The government is not allowed to seize the assets of a taxpayer and then articulate reasons to justify the action which were unknown to or unconsidered by the agent at the time of the seizure.

To summarize, the government has failed to demonstrate that the jeopardy levy was reasonable in this case. The evidence before the Court indicates that the Hendersons have attempted to pay all federal and state taxes which they knew were due. Further, the Hendersons have lived at the same residence for over 15 years, and do not appear to be a flight risk. While the Austin Police Department indicated that it planned to close the Hendersons' Austin businesses, the evidence before the Court is insufficient to justify the conclusion that the Hendersons are or were in danger of becoming insolvent. Considering the circumstances of this case, the government has failed to demonstrate that its use of a collection device as extraordinary as a jeopardy levy was reasonable. The Court determines that the jeopardy levy should be released. 26 U.S.C. § 7429(b)(4).

■ As the prevailing party, the Hendersons claim that they are entitled to reasonable attorney's fees pursuant to 26 U.S.C. § 7430. The Court may award attorney's fees pursuant to § 7430 if the position of the government was not "substantially justified." *In re Rasbury*, 24 F.3d 159, 166 (11th Cir.1994). The decision of the Court to award or deny attorney's fees is not reviewable. 26 U.S.C. § 7430(f); 26 U.S.C. § 7429(f).

A position that is substantially justified is one that is "justified to a degree that could satisfy a reasonable person" or that has a "reasonable basis in both law and fact." *In re Rasbury*, 24 F.3d at 168. Although the position of the government was unmeritorious, the Court determines that the position of the government had a reasonable basis in law and fact. Therefore, an award of attorney's fees is not warranted in this case.

The Court notes that the Hendersons' complaint also requests that the assessment be set aside as unreasonable. However, because of the limited nature of this action, the Court expresses no opinion as to the validity of the assessment. *Nolan v. U.S.*, 539 F.Supp. 788, 790 (D.Az.1982) (district court does not determine the ultimate tax liability nor does the district court's determination affect any future ruling in tax court). The parties apparently agree that the

478

Hendersons must challenge the assessment in U.S. Tax Court.

It is therefore **ORDERED** the Plaintiffs Ricky and Rita Hendersons' Complaint to Set Aside Jeopardy Levy, filed July 11, 1995, **is granted.**

It is **FURTHER ORDERED** that the jeopardy levy placed on the seized currency is set aside.