501 F.2d 108
 74-2 USTC P 9687
 Elzie C. CLARK, Gwendolyn Clark, Willie Stovall and
Gwendolyn Stovall, Plaintiffs-Appellees-Cross Appellants,
v.
Ellis CAMPBELL, Jr., Dist. Director of Internal Revenue,
Lewis Giles, Revenue Officer, and United States of
America, Defendants-Appellants-Cross Appellees.
 No. 73-2147.
 United States Court of Appeals, Fifth Circuit,
 Sept. 12, 1974.
 
 Scott P. Crampton, Asst. Atty. Gen., Richard Farber, Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Lee H. Henkel, Jr., Acting Chief Counsel, I. R.S., Washington, D.C., Frank D. McCown, U.S. Atty., Kenneth J. Mighell, Asst. U.S. Atty., Dallas, Tex., for defendants-appellants.
 Merle R. Flagg, Dallas, Tex., for plaintiffs-appellees.
 Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 A weapon, little known and previously not too often employed, having atomic potentialities in the arsenal of the tax gatherer is the power of IRS to order quick termination of a taxpayer's tax year with summary demand for immediate full payment with the sanctions of levy, seizure and sale. The issue in this appeal in a now much contested area[1] as this technique is found to be an effective tool in the relentless struggle against the traffic in drugs, is whether these awesome consequences can be consummated without a deficiency notice. If one is required, the present appellee taxpayer wins at least for the time being. But the result far transcends immediate relief to this litigant. For a holding against the necessity for a deficiency notice deprives the 'victim' of this summary administrative procedure of any right of prepayment judicial review by petition to the Tax Court and remits him to payment, filing of claim for refund and suit in the District Court for refund.
 
 
 2
 We hold that in the intricate structure of the Tax Act-- which we painstakingly, perhaps painfully painstakingly dissect, since the Circuits are divided on it[2] -- Congress could, and did, not have any such discriminate purpose and consequently a proper construction is to require the deficiency notice.[3] Consequently we affirm.
 
 
 3
 On June 11, 1969, the BNDD, pursuant to a warrant searched two buildings in Dallas, Texas seizing a substantial amount of property belonging to appellee (Elzie Clark) in the process. Appellee was notified by letter dated July 14, 1969 that his taxable period had been immediately terminated pursuant to the quick termination procedure of 6851(a)[4] of the Internal Revenue Code and that a tax of $104,697.20 for this period had been assessed and was immediately due and payable. The IRS posted notices of levy on and filed federal tax liens against real estate owned by appellee and served notices of levy on three Dallas banks, the Dallas Sheriff's Department and the Regional Director of the BNDD requesting that any property or monies of appellee should be surrendered to cover the alleged tax liability.[5]
 
 
 4
 On November 10, 1969 appellee brought this suit in the District Court pursuant to 6213(a)[6] seeking to remove clouds on the title and to enjoin the levy on and seizure of his property on the grounds that the District Director should have, but had not issued a notice of deficiency to appellee. Finding that a deficiency notice was required, the District Court ordered that the assessment and levy would be enjoined unless the IRS issued a notice within 60 days.[7] The IRS has appealed.
 
 The Procedure-- Ordinary And Jeopardy
 
 5
 Ordinarily, if, after the taxpayer has filed a return following the close of the tax year, the IRS has reason to believe that a taxpayer has failed to pay a portion of or the entire tax due, it will determine that a deficiency exists.[8] In order to commence proceedings to recover the deficiency, the IRS is required to send the taxpayer a formal notice of deficiency by secured mail.[9] The taxpayer may then contest liability in either of two alternate forums. The taxpayer may file a petition for redetermination in the Tax Court within 90 days of receipt of the deficiency notice (hence in the parlance of the taxwise the deficiency notice has become known as a '90-day letter') pursuant to 6213[10] or the taxpayer may choose to pay the alleged deficiency, file a claim of refund, and bring a suit for refund in the District Court in six months.[11]
 
 
 6
 The jurisdiction of the Tax Court to redetermine tax liability prior to payment is explicitly based on the issuance of a deficiency notice.[12] Concomitantly, 6213(a)[13] permits the taxpayer to obtain an injunction against the assessment or levy of a deficiency in the absence of the requisite deficiency notice and opportunity to petition the Tax Court.
 
 
 7
 Of course, even in the idyllic state of self-imposed taxation, the Congress long ago recognized that the ordinary procedures will at times prove inadequate. Thus two separate provisions of the Code grant the IRS special powers and procedures where there is reason to believe that the collection of the revenue is in jeopardy. Section 6861 authorizes the IRS to immediately assess a deficiency and demand immediate payment where the Secretary or his delegate[14] believes that the assessment or collection of the deficiency would be jeopardized by delay.[15] However, under 6861(b)[16] the Secretary is required to mail a notice of deficiency to the taxpayer within 60 days of the jeopardy assessment. Therefore, despite the summary assessment authority, the taxpayer retains the right to petition the Tax Court for a redetermination.[17] But despite assessment, levy and seizure, the IRS is prohibited from disposing of the taxpayer's assets during the time in which the taxpayer may petition the Tax Court or during the pendency of the Tax Court proceedings.[18]
 
 
 8
 In addition to 6861, the IRS is given the 6851[19] quick termination power to terminate the taxpayer's taxable period 'if the Secretary . . . finds that (the) taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax . . ..' The IRS may then serve notice and demand payment of any tax determined to be owing for that year or the preceding tax year. Under 6851(b)[20] the taxpayer may reopen his taxable period after it has been terminated by filing a true and accurate return of income tax for the taxable period in question or the IRS may open the tax period as often as necessary if it discovers additional income earned within the taxable period.
 
 
 9
 Unlike 6861, however, 6851 makes no mention of deficiencies or Tax Court review nor does it explicitly provide assessment authority.
 
 
 10
 This focuses on the issue in this litigation of whether a quick termination taxpayer whose taxable year has been terminated pursuant to 6851 is entitled to the same procedural safeguards which are available to the taxpayer who is the subject of a 6861 jeopardy assessment. Specific protections in issue have been recently summarized as follows:
 
 
 11
 1. The IRS is required to send a deficiency notice within sixty days after the assessment, thus enabling the jeopardy taxpayer to litigate in the Tax Court. 6861(b). If the IRS does not comply with this requirement, the assessment and levy (or seizure) may be enjoined by the federal courts. 6213(a); United States v. Ball (4 Cir., 1964, 326 F.2d 898), supra.
 
 
 12
 2. The jeopardy taxpayer can stay all collection action pending the Tax Court's decision if he is able to post an adequate bond. 6863(a).
 
 
 13
 3. Property seized pursuant to the assessment may not, in general, be sold during the pendency of litigation in the Tax Court. 6863(b)(3)(A).
 
 
 14
 4. The IRS 'may' abate the jeopardy assessment if it 'finds' that jeopardy does not exist. 6861(g).[21]
 
 The Developing Case Law
 
 15
 Until quite recently there has been a paucity of litigation on the issue before this Court despite the lengthy codal coexistence of 6851 and 6861. The emergence of the issue seems primarily attributable to the Service's recent pattern of its willingness to utilize 6851 in conjunction with requests from BNDD in narcotics enforcement activities.[22]
 
 Genesis: In The Beginning
 
 16
 It all started back in 1938 when in Ludwig Littauer & Co. v. Commissioner, 1938, 37 B.T.A. 840, appeal dismissed, 2 Cir., Dec. 31, 1938 (unpublished), the Board of Tax Appeals (the predecessor of the Tax Court) had occasion to consider whether the procedural safeguards provided by 273 of the Revenue Act of 1936 (the predecessor of 6861) were applicable to a termination of the taxable year under 146 of the Revenue Act of 1936 (the predecessor of 6851). The BTA recognized that both 273 (6861) and 146 (6851) were concerned with the collection of jeopardized revenue. However, reasoning that '146(a) (6851), presupposes a more exigent situation of jeopardy than that covered by a 273 (6861),' the BTA concluded that the deficiency notice procedure of 273 (6861) did not apply to 146 (6851) in the absence of an explicit statutory mandate to that effect. 37 B.T.A. at 842. Pointing out that the taxpayer could avoid immediate payment by posting a bond and citing a Revenue Ruling that referred to the taxpayer's ability to file a full year return after having been subjected to a short year termination-- the BTA concluded that a statutory deficiency could only be created by 'a determination of correct tax liability' at the expiration of the full taxable year. 37 B.T.A. at 843. Having determined that the 'thing' created by 146(a) (6851) was not a deficiency, the BTA concluded that it 'is but a provisional statement of the amount which must be presently paid as against the impossibility of collection'. 37 B.T.A. at 842.
 
 
 17
 Littauer was followed without further elaboration in Puritan Church of America v. Commissioner, 1951, 10 TCM 485, aff'd per curiam, 1953, 93 U.S.App.D.C. 129, 209 F.2d 306, cert. denied, 1954, 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115.
 
 
 18
 There it stood until 1969 when District Judge Frank Kaufman in a lengthy and scholarly opinion in Schreck v. United States, D.Md., 1969, 301 F.Supp. 1265 held that the quick termination taxpayer was indeed entitled to a deficiency notice when his tax year was terminated pursuant to 6851. After carefully tracing the development of 6851, 6861 and their predecessors, Judge Kaufman rejected the Government's argument that 6851 granted independent assessment authority. Finding Littauer unpersuasive he observed that the Treasury's own definition of 'deficiency' in its regulations was broad enough to encompass 'the thing' created when a taxable year was quick terminated under 6851. Emphasizing the clear Congressional policy of providing the taxpayer with an opportunity promptly to litigate liability prior to payment, Judge Kaufman concluded that the power to assess a deficiency under 6851 must arise under 6861 and with it comes the procedural safeguards found in the latter section. In 1971 in Williamson v. United States, 71-2 USTC P9753, the Seventh Circuit followed Littauer in an unpublished order.
 
 
 19
 In early 1973, District Courts in the Fifth, Sixth and Ninth Circuits followed Schreck.[23]
 
 
 20
 In Irving v. Gray, 2 Cir., 1973, 479 F.2d 20, a case involving the notorious bogus biographer of Howard Hughes whom the IRS suspected of intending to remove his ill-gotten assets from the reach of IRS, the Second Circuit determined that the deficiency procedure was inapplicable to a 6851 quick termination. The Court rejected Schreck, reasoning that 6201[24] provided independent assessment authority even if 6851 did not and that the taxpayer had an adequate remedy either by payment of the tax and filing of a claim or by filing a full year return, paying and reporting an overpayment, and then filing a refund action in the District Court in six months.
 
 
 21
 To round out the picture the Sixth Circuit has just recently declared that the notice is required.[24]
 
 
 22
 A careful consideration of the pertinent Code provisions, legislative history and the policies that Congress has sought to further convinces us of several critical matters. First, the 'thing' created by an assessment following a short year termination under 6851 falls within the statutory definition of 'deficiency'. Second, the assessment authority for a 6851 deficiency is found in 6861. Third, the procedural safeguards mandated by 6861, particularly the right to petition the Tax Court for redetermination, are applicable to a 6851 quick termination.
 
 
 23
 Is The 'Thing' A Deficiency?
 
 
 24
 Tax Court jurisdiction to redetermine liability prior to payment is predicated on the existence of a deficiency within the meaning of the Code.[25] Thus the formal deficiency notice prescribed by 6213(a) or 6861(a) (see notes 6 and 15, supra) in the case of a jeopardy assessment has been described as '(a) ticket to the tax court.' Corbett v. Frank, 9 Cir., 1961, 293 F.2d 501, 502. See Mason v. Commissioner, 5 Cir., 1954, 210 F.2d 388.[26] The Government argues that the liability created when a tax period is terminated pursuant to 6851 and a tax is assessed is not a 'deficiency', and therefore the taxpayer is not entitled to petition the Tax Court for a redetermination.
 
 
 25
 Section 6211 defines a deficiency (note 8, supra). But the applicable regulation 301.6211-1 amplifies it further:
 
 
 26
 If no return is made, or if the return (except a return of income tax pursuant to sec. 6014) does not show any tax, for the purpose of the definition 'the amount shown as the tax by the taxpayer upon his return' shall be considered as zero. Accordingly, in any such case, if no deficiencies with respect to the tax have been assessed, or collected without assessment, and no rebates with respect to the tax have been made, the deficiency is the amount of the tax imposed by subtitle A, chapter 11, or chapter 12 . . ..
 
 
 27
 As 6211 illustrates, ordinarily a deficiency is created when the taxpayer has filed a return at the close of his tax period and the IRS determines that the taxpayer's tax liability exceeds that amount which has been set forth in his return. In other words, an additional tax is due and payable.[27] The regulation recognizes, however, that the Service may determine a deficiency in the absence of a return. See Rambo, supra 492 F.2d at 1064. Indeed, 6211 in a very technical sense undertakes to define 'deficiency' 'if a return was made by the taxpayer' with no mention of that obvious class of under-payers who do not file a return.
 
 
 28
 When the Secretary finds that the collection of the revenue is jeopardized within the standards set forth in 6851(a) he shall
 
 
 29
 declare the taxable period for such taxpayer immediately terminated and (cause) notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated . . ..
 
 
 30
 The taxpayer is informed that his taxable year, which would have otherwise run its normal course, has been terminated and that the tax for the terminated year is immediately due and payable.[28] In short, where the day before he literally did not then owe a tax, he is on receipt of this demand required to pay more than what he was (the day before) obligated to do.
 
 
 31
 In Littauer the Board of Tax Appeals viewed this event not as the final imposition of a tax but rather as a type of mandatorily imposed bond to ensure payment at the end of the normal taxable period.[29] However, 6851 itself clearly provides that immediate tax liability has been imposed. Although 6851(b)[30] grants the taxpayer the option of re-opening his tax period by filing 'a true and accurate return of the items of gross income and of the deductions and credits allowed under this title for such taxable period, together with such other information as the Secretary or his delegate may by regulations prescrible . . ..' the tax remains immediately payable unless such bonding option is exercised and the taxpayer's assets remain immobilized.
 
 
 32
 Although perhaps not legally significant, it is almost certain that the taxpayer who receives a letter terminating his tax year, assessing a tax in excess of his existing assets and demanding immediate payment of the alleged taxes due, and then shortly discovers that all of his existing assets have been seized, would find neither comfort nor reason in the IRS's explanation that the opportunity for prompt adjudication of the alleged liability is precluded because the 'thing' which has been assessed is not technically a deficiency.
 
 
 33
 The recent case of Nino Sanzogno, 1973, 60 T.C. 321 suggests that the Tax Court is no longer comfortable with the Littauer rationale. Petitioner, an Italian opera maestro, earned approximately $8,000 during a four week performance with the Lyric Opera of Chicago in 1965. On his departure to Italy, the IRS terminated his tax year under 6851(a) and required him to obtain his 'sailing permit' pursuant to 6851(d)[31] by filing a Form 1040C-- a Departing Alien Income Tax Return. The maestro, presumably in a spirit of musical and official harmony, filed the form and was permitted to depart. Long after the curtain had fallen and the last United States bow forgotten he received over three years later a notice of deficiency pertaining to the income earned in 1965. Petitioner argued that by filing a Form 1040C he had filed a return within the meaning of 6501[32] and thus the three-year statute of limitations had expired. The IRS contended that a 1040C was not a 'final return' and that the petitioner was required to file a Form 1040B at the close of his normal tax year in order to trigger the statute of limitations.
 
 
 34
 In rejecting the argument of IRS, the Tax Court observed:
 
 
 35
 Form 1040C filed by petitioner herein covered his entire taxable year. The taxable year of petitioner ended on October 19, 1965, the date that the district director terminated it.[2] The 2. It is possible that our holding is in some conflict with the rationale of our opinion in Ludwig Littauer & Co., 37 B.T.A. 840 (1938). However, the issue in that case is not before us here. Irving v. Gray, 344 F.Supp. 567 (S.D.N.Y.1972), on appeal, 479 F.2d 20 (C.A. 2, 1972); Williamson v. United States, an unreported case (N.D.Ill.1969, 24 A.F.T.R.2d 69-5561, 69-2 U.S.T.C. par. 9681), affirmed in an unreported opinion (C.A. 7, Apr. 8, 1971); contra, Schreck v. United States, 301 F.Supp. 1265 (D.Md. 1969); Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex.1972); Rambo v. United States, 353 F.Supp. 1021 (W.D.Ky.1972). form 1040C was a short-period return but was, nevertheless, a return and is recognized as such in section 443(a)(3) which refers to section 6851. See also, sec. 1.443-1(a)(3), Income Tax Regs., which directs the reader's attention to section 6851 and the regulations under that section. Respondent argues that the taxable year is the calendar year 1965 because petitioner could have returned to the United States and earned additional income before December 31. If that had occurred, the district director could have reopened the taxable year of petitioner. There is no evidence that the taxable year of petitioner was reopened.
 
 
 36
 60 TC at 325.
 
 
 37
 In a concurring opinion, Judge Simpson declared, 'I wholly agree with the results reached by the majority. In my opinion, such results are inconsistent with the rationale of this Court's opinion in Ludwig Littuer & Co., 37 B.T.A. 840 (1938), but in my judgment, that rationale should no longer be followed . . .', citing Schreck, Rambo and the District Court decision in the instant case.
 
 
 38
 60 TC at 330.
 
 
 39
 Thus the Tax Court now appears to recognize that from the taxpayer's standpoint a 6851 quick termination brings the tax period to a close and creates a liability not unlike that which would exist at the close of the normal tax period. Such an interpretation supports the conclusion that the tax liability created subsequent to a 6851 quick termination falls within the Codal definition of deficiency as amplified by the regulations.
 
 
 40
 We agree with Schreck that 6211 and the applicable regulations are broad enough to cover the 'thing' created by an assessment following a 6851 termination.[33] See Schreck, supra, 301 F.Supp. at 1277; Rambo, supra, 492 F.2d at 1064. What is more, we believe that the liability created under 6851 is as a matter of fact the same type of 'thing' as a 6211 deficiency.[34] We see no significant distinction, nor any need for one. Since the tax liability which becomes immediately due and payable following a 6851 quick termination fits within the Codal definition of deficiency, a prepayment redetermination of that liability would be within the jurisdiction of the Tax Court.
 
 The Source of Assessment
 
 41
 In an effort to determine whether the deficiency notice procedure is applicable to a 6851 quick termination, the courts have given consideration to the source of the assessment authority for the tax which 6851 presupposes. As we noted earlier, 6861 explicitly provides its own assessment authority while there is no mention of assessment under 6851. If assessment of the 6851 tax due is indeed grounded sufficiently in 6861 it would be impossible to avoid the conclusion that the deficiency notice procedure so carefully prescribed in 6861 is likewise applicable to 6851. So the source of the assessment is a significant argument in favor of reading into 6851 the 6861 deficiency notice.
 
 
 42
 Originally, in Schreck the IRS contended that 6851 implicitly contained its own assessment authority. That contention was rejected by the Court and the IRS has since abandoned it. Instead the IRS successfully argued in Irving and here contends that 6851 assessment authority is found in 6201, the general assessment authority provision of the Code.[35]
 
 
 43
 The Government argues that assessment under 6851 cannot be dependent upon 6861 since the predecessor of 6851 was enacted prior to 6861.[36] However, as Judge Kaufman delineates so well in Schreck, the evolution of our revenue system from an unintegrated collection of separate revenue acts through two careful codifications, may well create new affiliations between long existent, but formerly disparate provisions.[37]
 
 
 44
 In concluding that assessment authority for 6851 liability is found in 6861 rather than 6201 (see note 24, supra), we are particularly cognizant of the necessity of reaching a result that is in harmony with 'our carefully structured twentieth century system of tax litigation.' Flora v. United States, 1960, 362 U.S. 145, 176, 80 S.Ct. 630, 647, 4 L.Ed.2d 623, 641.
 
 
 45
 Section 6201 provides generally the authority to assess uncontested taxes. Where there is no contest (e.g. payment in accordance with the return) there is no great need for a prepayment forum. But where there is a dispute as to the liability in the ordinary run-of-the-mill non-jeopardy situation the IRS must proceed under the deficiency notice procedure contained in 6211-6215.
 
 
 46
 When a jeopardy assessment is made pursuant to 6861, a similar deficiency notice procedure is applicable-- the chief difference being that the taxpayer receives his deficiency notice and right to petition the Tax Court subsequent to the assessment. Nevertheless, Congress has tempered this awesome power of immediate assessment by providing welcome procedural protection in the form of an opportunity for pre-payment litigation.
 
 
 47
 Like 6861, 6851 grants the IRS extraordinary powers to meet those situations where the collection of the revenue may be in jeopardy. Sections 6851 and 6861 are analogous-- indeed both appear in the subchapter entitled JEOPARDY. It would be unsound construction to treat these two equally potent and similarly oriented provisions in the disparate manner which the Government has proposed. See Rambo, supra, 292 F.2d at 1064.
 
 
 48
 As the District Court in Lisner v. McCanless, supra, observed, the tax procedure has been structured to provide for ordinary uncontested assessment, normal year-end deficiency assessment, and jeopardy assessment. Section 6201 provides the ordinary assessment authority, 6213 provides assessment authority for the year-end deficiency situation and 6861 provides authority for jeopardy assessments. Section 6851 clearly covers a jeopardy situation and the assessment subsequent to a 6851 quick termination is as to all of its practical consequences a jeopardy assessment. What it is in fact, it is also in law. To find the assessment power for a 6851 assessment in the ordinary assessment provision (6201) rather than the jeopardy assessment provision would be a complete derogation of the obvious and carefully considered pattern of the Code.
 
 
 49
 Thus we are in complete agreement with the observations of Judge Copple in Lisner, supra.
 
 
 50
 It is axiomatic that a true code-- which Congress intended here to create-- is primarily different from statutes in that a comprehensive, cross-related scheme of laws is presented. No one section can be interpreted without reference to its place in the scheme of things . . .. . . . To imagain that Congress, which enacted these two sections under the general title 'Subchapter A-- Jeopardy,' intended the sections to be used as 'wild cards' without reference to its carefully constructed collection scheme, is to ignore plain english. . . . Section 6861 is the only assessment authority in the Code designated 'jeopardy.' The attempt of the government to bypass the procedural requirements of section 6861 in this and other cases has led it on a path of convolutions and strained interpretations, instead of an attempt to find order in a highly structured code.
 
 
 51
 356 F.Supp. at 401-403.
 
 
 52
 Furthermore, if we were to find the assessment authority for a 6851 deficiency in 6201 rather than 6861 we would in effect invite the IRS to evade the procedural safeguards so deliberately embodied in 6861 by relying on 6851 when a jeopardy situation arises. In this way the right to Tax Court review could be totally cut off for all jeopardy situations, both 6851 and 6861.
 
 
 53
 We hold that the authority to assess a 6851 deficiency must be found in 6861.
 
 The Right To Litigate Now And Pay Later
 
 54
 The clear Congressional intention to provide all taxpayers with a forum in which to contest income tax liability prior to payment is a compelling factor in our conclusion that the 6861 deficiency notice procedure applies to the 6851 quick terminated taxpayer.
 
 In 1924 Congress recognized that:
 
 55
 The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in non-liquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayer to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment.
 
 
 56
 H.R.Rep.No.179, 68th Cong., 1st Sess. (1924). Therefore, Congress created the Board of Tax Appeals as a forum in which the taxpayer could obtain an adjudication of tax liability prior to payment. Initially the Board served in an essentially advisory capacity.[38] In 1926, however, Congress transformed the Board into a more traditional adjudicatory body forcing the taxpayer to choose between litigation prior to payment in the Board of Tax Appeals or subsequent to payment in the District Court. Concurrently, Congress enacted 279 (the predecessor of 6861) which granted the subject of a jeopardy assessment the right to receive a deficiency notice and petition the Board of Tax Appeals for a redetermination. Thus as the law now stands the taxpayer has the right to an adjudication of income tax liability prior to payment regardless of whether the tax has arisen pursuant to an ordinary deficiency or a jeopardy assessment.
 
 
 57
 The power to make a jeopardy assessment under 6861 or to order a quick termination declaring all taxes immediately due and payable under 6851 is for both, both summary in nature and awesome in effect.
 
 
 58
 As our brothers in the Seventh Circuit once noted, 'there is little doubt but what a jeopardy assessment is a statutory label for the sovereign's stranglehold on a taxpayer's assets.' Homan Mfg. Co. v. Long, 7 Cir., 1957, 242 F.2d 645. The stranglehold may be equally applied by 6851 or 6861 and to the neck there is no difference. Under either provision by summarily immobilizing his assets the financial disaster may overcome the taxpayer. Thus the taxpayer may become 'indigent overnight'.[39] One commentator has observed that:
 
 
 59
 The action of freezing the assets of the taxpayers prevents them from paying fire insurance premiums on their property, making necessary repairs, paying real estate taxes and from using their funds for the protection of their property and for ordinary living expenses.[40]
 
 
 60
 Another has noted that the freezing of the taxpayer's assets may result in 'prevention of posting of the necessary bond, impossibility of adequate defense, and eventual loss of the property at a forced sale.'[41] We ought not to lightly disregard the apparent Congressional intention to temper the effects of this potentially devastating summary power.[42]
 
 
 61
 As noted earlier[43] there are certain protections aside from the right to petition the Tax Court available to the victim of a jeopardy assessment. However, these safeguards may be of questionable value to the victim of a short year quick termination. The taxpayer may stay immediate enforcement of proceedings under 6851 or 6861 by furnishing a bond[44] equal to the amount of the assessment. Despite our vantage so far removed from the real world of business we know enough of the economic facts of life to recognize that a jeopardy taxpayer will find it difficult, if not impossible, to obtain a bond once all of his assets have been placed beyond his control.[45] Some courts have said that the right to file a bond may be an 'illusory remedy'[46] if not a complete 'mockery'.[47]
 
 
 62
 Indeed, it is the practicable inadequacy of the right to bond that makes so valuable the prohibition on sale of seized assets once the petition to the Tax Court may be and is filed. See discussion post and 6863 (note 18, supra).
 
 
 63
 The IRS may abate the assessment under 6861(c)[48] if it is deemed excessive or under 6861(g)[49] if jeopardy does not exist. Such power seems to be wholly discretionary and will be exercised only where the taxpayer is capable of persuading the District Director in conference that a mistake has been made.[50] The abatement power necessarily offers limited protection.
 
 
 64
 Where the taxpayer's assets have been frozen, the only meaningful remedy is to obtain an adjudication of liability as promptly as possible. This is given to a 6861 jeopardy taxpayer.
 
 
 65
 Under 6861(b) the IRS must send the taxpayer a deficiency notice within 60 days of the assessment. The taxpayer then has 90 days to petition for a redetermination in the Tax Court. At this point a very valuable protection comes into being-- and one wholly unavailable for a taxpayer forced to pay, file claim and then sue for refund, and in no way dependent upon the jeopardy taxpayer's unlikely ability to make a bond. For the Code expressly provides that the IRS may not sell the taxpayer's assets during (i) the period in which the taxpayer may apply for Tax Court review nor (ii) during the course of the proceedings.[51] Thus the Tax Court can provide a jeopardy taxpayer, whether of the 6851 or 6861 variety, a reasonably speedy forum for obtaining an adjudication of the liability which has been so summarily imposed[52] and before his property is forever lost to him by seizure and sale.
 
 
 66
 The taxpayer's other alternative-- full payment[53] -- followed by a refund suit in the District Court does not offer as speedy or as effective an opportunity for review. The taxpayer must file a claim for refund with the Secretary and then wait six months before bringing the suit for refund.[54] Obviously, when all of the taxpayer's assets have been placed beyond his control, the six month waiting period can prove to be an unbearable delay.
 
 
 67
 And as Judge Kaufman has so graphically illustrated, the road to the District Court may harbor a multiplicity of obstacles for the 6851 taxpayer. See Schreck, supra note 21, 301 F.Supp. at 1280-1281. For instance, the IRS may levy on the taxpayer's property without applying the property seized to the tax liability assessed or the property seized may not cover the full amount of the assessment. In either case the taxpayer would be barred from the District Court by the Flora full payment rule.[55] or as was apparently the case is Schreck, the IRS may not apply the property seized from the taxpayer to the outstanding liability because of a pending forfeiture proceeding.
 
 
 68
 This analysis reflects that under nearly every likely circumstance the refund in the District Court cannot, and does not, provide the 6851 quick termination taxpayer with a remedy as prompt and effective as the pre-payment suit for redetermination in the Tax Court.[56]
 
 
 69
 Under 6861 and 6851 as we interpret them the taxpayer may obtain review of liability prior to actual payment even though the IRS may seize the taxpayer's assets before the commencement of Tax Court proceedings. There is a considerable difference between an assessment and levy on the jeopardy taxpayer's assets prior to adjudication and the ultimate disposal of those assets coupled with the application of the proceeds to the alleged liability. It is the latter against which the jeopardy taxpayer is protected by the deficiency procedure.
 
 
 70
 We fail to see how any legitimate government interest will be prejudiced by construing the law to permit the 6851 quick termination taxpayer to seek a redetermination in the Tax Court before his assets are involuntarily applied to the liability. The opportunity for prompt review will hardly dry up the sources of revenue or stop the Government in its tracks since virtually all other taxpayers (6861 jeopardy or otherwise) who desire to contest income tax liability prior to payment are currently allowed to do so.[57] Nor will the purpose of 6851 and 6861-- the avoidance of tax evasion-- be thwarted since the Government will still be able to seize all of the taxpayer's available assets necessary to satisfy the potential liability prior to the Tax Court proceeding.
 
 
 71
 In view of the Congressional intent long held since 1926 to provide taxpayers with a forum for review of income tax liability prior to payment, the disastrous effects that a 6851 termination can have on the taxpayer in the absence of a prompt review of liability, the relative inadequacy of a post-payment review, and the lack of prejudice to any legitimate governmental interest attributable to a Tax Court redetermination, we conclude that in the contemporary structure of the Code, Congress meant for the deficiency notice procedures of 6861 to be equally applicable to a 6581 quick termination taxpayer. We cannot believe that Congress would find any real basis for withholding the protection of a prepayment Tax Court review from the 6851 victim while granting it freely to all other 6861 jeopardy taxpayers. Since the ticket to the Tax Court is the deficiency notice, we think that Congress intended that right to be for 6851 taxpayers as well.
 
 
 72
 Accordingly we hold that the District Court's order enjoining the IRS from assessing and levying on appellee's assets unless a notice of deficiency is first issued pursuant to 6861 was correct.
 
 
 73
 Affirmed.
 
 
 
 [1]
 This is set out in note 4 of Judge Clark's recent opinion for us in Willits v. Richardson, 5 Cir., 1974, 497 F.2d 240, 246
 
 
 [4]
 This is an issue which is the subject of extensive litigation with thus far varying results in the several circuits that have addressed the problem. The Second and Seventh Circuits have held that an assessment made under Section 6851 and Section 6201 is not a 'deficiency' within the purview of Section 6211 for which Section 6212(a) mandates that notice issue. See Laing v. United States, 496 F.2d 853 (2d Cir. 1974), aff'g 364 F.Supp. 469 (D.Vt.1973), petition for cert. filed, 42 U.S.L.W. 3679 (U.S. May 31, 1974) (No. 73-1808); Chapman v. IRS, 487 F.2d 1393 (2d Cir. 1973) (decision without opinion), aff'g 32 Am.Fed.Tax R.2d 5027 (S.D.N.Y.); Irving v. Gray, 479 F.2d 20 (2d Cir. 1973); Williamson v. United States, 31 Am.Fed.Tax R.2d 800 (7th Cir. 1971). Concluding that a tax declared under Section 6851 is a deficiency within the ambit of Sections 6211 and 6861, the Sixth Circuit recently reached the contrary result. Rambo v. United States, 492 F.2d 1060 (6th Cir. 1974); Hall v. United States, 493 F.2d 1211 (6th Cir. 1974). This issue may have been involved, sub silentio, in Lewis v. Sandler, 498 F.2d 395 (4th Cir. 1974) (#73-2185 June 6, 1974). Currently, a number of appeals raising the question are pending in this court as well as in the Third, Fourth and Ninth Circuits. See Boyd v. United States (E.D.Pa.1974) (notice of deficiency not required) (33 Am.Fed.Tax R.2d 1246 Apr. 16, 1974), appeal docketed, No. 74-1565, 3d Cir., June 10, 1974; Schreck v. United States, 301 F.Supp. 1265 (D.Md.1969) (notice of deficiency required), reaff'd on recon., 375 F.Supp. 742 (D.Md.1973), appeal docketed, No. 74-1566, 4th Cir., May 16, 1974; Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex.1972) (deficiency notice required), appeal docketed, No. 73-2147, 5th Cir., argued Dec. 4, 1973; Aguilar v. United States, 359 F.Supp. 269 (S.D.Tex.1973), appeal docketed, 501 F.2d 127, No. 73-2454, 5th Cir., argued Dec. 4, 1973; Rodger v. United States (S.D.Fla.1974) (deficiency notice not required) (#73-705-CIV-CA Jan. 29, 1974), appeal docketed, No. 74-1723, 5th Cir., Mar. 18, 1974; Rogers v. O'Donnell (M.D.Fla.1974) (deficiency notice required) (#72-246-ORL-CIV Mar. 5, 1974), appeal docketed, No. 74-1731, 5th Cir., Apr. 18, 1974; Lisner v. McCanless, 356 F.Supp. 398 (D.Ariz.1973) (deficiency notice required), appeal docketed, Nos. 73-2037 & 73-2038, 9th Cir., June 8, 1973; Woods v. McKeever (D.Ariz.1973) (deficiency notice required) (32 Am.Fed.Tax R.2d 5967 Oct. 16, 1973), appeal docketed, No. 74-1133, 9th Cir., Jan. 25, 1974; Williams v. United States, 373 F.Supp. 71 (D.Nev.1973) (deficiency notice required) (33 Am.Fed.Tax R.2d 467 Nov. 16, 1973), appeal docketed, No. 74-1192, 9th Cir., Feb. 4, 1974; Avery v. Sparley (E.D.Wash.1973) (deficiency notice required) (Civ. #3860 Nov. 16, 1973), appeal docketed, No. 74-1625, 9th Cir., Apr. 10, 1974; Shaw v. McKeever (D.Ariz.1974) (deficiency notice required) (33 Am.Fed.Tax R.2d 1213 Mar. 22, 1974), appeal docketed, No. , 9th Cir. (notice of appeal filed May 17, 1974); see also Musso v. Commissioner, 32 CCH Tax Ct.Mem. 849 (1973) (Section 6212 notice of deficiency prerequisite to Tax Court jurisdiction to redetermine taxes assessed after Section 6851 termination), appeal docketed, No. 73-3916, 5th Cir., Dec. 12, 1973
 
 
 [2]
 The Second and Seventh Circuits reject the requirement, the Sixth is to the contrary. See note 1, supra
 
 
 [3]
 Argued on the same day, controlled by this opinion and this day decided is Aguilar v. United States, 5 Cir., 1974, 501 F.2d 127, reversing, E.D.Tex., 1973, 359 F.Supp. 269
 
 
 [4]
 26 U.S.C.A. 6851. Termination of taxable year
 (a) Income tax in jeopardy.--
 (1) In general.-- If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.
 
 
 [5]
 Between July 16 and August 27 the IRS collected $61,998.54 to be applied toward the liability. The assessment was reduced to $50,995.65. According to the Government's Answer, checks for $7,393.50 were returned unpaid and $3,609.39 was credited against other alleged outstanding tax liabilities
 
 
 [6]
 26 U.S.C.A. 6213. Restrictions applicable to deficiencies; petition to Tax Court
 (a) Time for filing petition and restriction on assessment.-- Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.
 Section 6213 contains an explicit exception to 26 U.S.C.A. 7421(a)-- the anti-injunction provision of the Code which provides:
 26 U.S.C.A. 7421. Prohibition of suits to restrain assessment or collection
 (a) Tax.-- Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
 
 
 [7]
 Clark v. Campbell, N.D.Tex., 1972, 341 F.Supp. 171
 
 
 [8]
 26 U.S.C.A. 6211. Definition of a deficiency
 (a) In general.-- For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term 'deficiency' means the amount by which the tax imposed by subtitles A or B exceeds the excess of--
 (1) the sum of
 (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
 (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--
 (2) the amount of rebates, as defined in subsection (b)(2), made.
 
 
 [9]
 26 U.S.C.A. 6212. Notice of deficiency
 (a) In general.-- If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.
 
 
 [10]
 See note 6, supra
 
 
 [11]
 28 U.S.C.A. 1346. United States as defendant
 (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
 (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . .. 26 U.S.C.A. 7422. Civil actions for refund
 (a) No suit prior to filing claim for refund.-- No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.
 
 
 [12]
 See 6213 note 6, supra
 26 U.S.C.A. 6214. Determinations by Tax Court
 (a) Jurisdiction as to increase of deficiency, additional amounts, or additions to the tax.-- The Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or addition to the tax should be assessed, if claim therefor is asserted by the Secretary or his delegate at or before the hearing or a rehearing.
 
 
 [13]
 See note 6, supra
 
 
 [14]
 The authority has been delegated to the District Directors. See Rev.Proc. 60-4
 
 
 [15]
 26 U.S.C.A. 6861. Jeopardy assessments of income, estate, and gift taxes
 (a) Authority for making.-- If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.
 26 U.S.C.A. 6331(a) provides:
 * * * If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.
 
 
 [16]
 26 U.S.C.A. 6861
 (b) Deficiency letters.-- If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment.
 
 
 [17]
 Cf. 26 U.S.C.A. 6861(c)
 (c) Amount assessable before decision of Tax Court.-- The jeopardy assessment may be made in respect of a deficiency greater or less than that notice of which has been mailed to the taxpayer, despite the provisions of section 6212(c) prohibiting the determination of additional deficiencies, and whether or not the taxpayer has theretofore filed a petition with the Tax Court. The Secretary or his delegate may, at any time before the decision of the Tax Court is rendered, abate such assessment, or any unpaid portion thereof, to the extent that he believes the assessment to be excessive in amount. The Secretary or his delegate shall notify the Tax Court of the amount of such assessment, or abatement, if the petition is filed with the Tax Court before the making of the assessment or is subsequently filed, and the Tax Court shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith.
 
 
 [18]
 26 U.S.C.A. 6863(b)
 (3) Stay of sale of seized property pending Tax Court decision.--
 (A) General rule.-- Where, notwithstanding the provisions of section 6213(a), a jeopardy assessment has been made under section 6861 the property seized for the collection of the tax shall not be sold--
 (i) if section 6861(b) is applicable, prior to the issuance of the notice of deficiency and the expiration of the time provided in section 6213(a) for filing petition with the Tax Court, and
 (ii) if petition is filed with the Tax Court (whether before or after the making of such jeopardy assessment under section 6861), prior to the expiration of the period during which the assessment of the deficiency would be prohibited if section 6861(a) were not applicable.
 (B) Exceptions.-- Such property may be sold if--
 (i) the taxpayer consents to the sale,
 (ii) the Secretary or his delegate determines that the expenses of conservation and maintenance will greatly reduce the net proceeds, or
 (iii) the property is of the type described in section 6336.
 Since 6331(a), note 15, supra, allows the IRS to levy on the assets of the taxpayer subject to a jeopardy assessment, 6863(b)(3) necessarily overrides 6331(b) which provides:
 In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).
 
 
 [19]
 See note 4, supra
 
 
 [20]
 26 U.S.C.A. 6851
 (b) Reopening of taxable period.-- Notwithstanding the termination of the taxable period of the taxpayer by the Secretary or his delegate, as provided in subsection (a), the Secretary or his delegate may reopen such taxable period each time the taxpayer is found by the Secretary or his delegate to have received income, within the current taxable year, since a termination of the period under subsection (a). A taxable period so terminated by the Secretary or his delegate may be reopened by the taxpayer (other than a nonresident alien) if he files with the Secretary or his delegate a true and accurate return of the items of gross income and of the deductions and credits allowed under this title for such taxable period, together with such other information as the Secretary or his delegate may by regulations prescribe. If the taxpayer is a nonresident alien the taxable period so terminated may be reopened by him if he files, or causes to be filed, with the Secretary or his delegate a true and accurate return of his total income derived from all sources within the United States, in the manner prescribed in this title.
 
 
 [21]
 Schreck v. United States, D.C.Md., 1969, 301 F.Supp. 1265, 1279. The case, at this late date, is now on appeal to the Fourth Circuit (see note 1, supra)
 
 
 [22]
 Heading the list for us, of course, is Willits, note 1, supra, and Aguilar, note 3, supra. See also the Fourth Circuit's recent opinion, Lewis v. Sandler, 4 Cir., 1974, 498 F.2d 395 (June 6, 1974, No. 73-2185); and of the many cases listed in note 1, supra especially the following: Lisner v. McCanless, D.Ariz., 1973, 356 F.Supp. 398, appeal docketed, Nos. 73-2037 & 73-2038, 9 Cir., June 8, 1973; Rambo v. United States, W.D.Ky., 1972, 353 F.Supp. 1021; Rinieri v. Scanlon, S.D.N.Y., 1966, 254 F.Supp. 469; Williamson v. United States, N.D.Ill., 1969, 69-2 USTC P9681. Cf. United States v. Bonaguro, E.D.N.Y., 1968, 294 F.Supp. 750, aff'd subnom United States v. Dono, 2 Cir., 428 F.2d 204, cert. denied, 1970, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (6851 used to terminate tax year of possessor of counterfeit currency)
 Appellee contended that his tax year was terminated for punitive rather than revenue purposes. See Darnell v. Tomlinson, 5 Cir., 1955, 220 F.2d 894. The District Court refused to examine this argument and we find no need to although the Fourth Circuit has rejected it in Lewis, supra.
 
 
 [23]
 Clark v. Campbell, N.D.Tex., 1972, 341 F.Supp. 171; Rambo v. United States, W.D.Ky., 1972, 353 F.Supp. 1021; Lisner v. McCanless, D.Ariz., 1973, 356 F.Supp. 398, appeal docketed, Nos. 73-2037 & 73-2038, 9 Cir., June 8, 1973. A District Court in the Seventh Circuit necessarily followed Williamson, Parrish v. Daly, S.D.Ind., 1972, 350 F.Supp. 735, and another District Court in the Sixth Circuit rejected the Schreck rationale, Hogan v. United States, E.D.Mich., 73-2 USTC P9563
 
 
 [24]
 26 U.S.C.A. 6201. Assessment authority
 (a) Authority of Secretary or delegate.-- The Secretary or his delegate is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law.
 24A See notes 1 & 2, supra.
 
 
 [25]
 See notes 6 and 12, supra
 
 
 [26]
 Presumably this is the issue in Musso, now pending before this Court, see note 1, supra
 
 
 [27]
 'A deficiency is neither a legal theory nor an intangible concept. It is an amount of tax due representing the difference between the amount returned by the taxpayer and the amount which, in fact and law, is due the Government.' 9 Mertens, Law of Federal Income Taxation, 49.129 (Supp.1971) (hereinafter cited as Mertens)
 
 
 [28]
 The operation of the quick termination procedure is seen in the way IRS determines the tax due for the terminated period. In the instant case, the IRS assessed a figure of approximately $104,000.00, far in excess of the assets of the taxpayer that were seized or distrained
 If we can regard the reported cases, especially those in which the IRS is working in conjunction with the BNDD, as any indication, the IRS assesses a tax nearly equal to or in excess of the taxpayer's available assets. For example, in Aguilar, note 3, supra, the so-called 'tax' equalled exactly the amount of cash discovered ($11,270.00) plus the value of the pickup truck seized.
 In Willits, note 1, supra, from a seizure of $4,400.00, a gold coin and a piece of jewelry in taxpayer's purse, IRS worked up an income of $60,000.00 on supposed drug sales of $240,000.00, with a quick termination 6851 demand for $25,549.00 tax thereon.
 The cat got out of the bag in Rinieri v. Scanlon, S.D.N.Y., 1966, 254 F.Supp. 469. After the taxpayer-- a non-resident alien was discovered at the New York airport carrying $247,500.00 in United States currency aboard a plane bound for Switzerland, the taxpayer was detained and an immediate assessment of approximately $247,820.00 was made pursuant to 6851. The revenue agent who prepared the return was later questioned concerning his computation of the taxpayer's tax liability.
 Q. To be very blunt about it, isn't it a fact that you were just merely told to write a report that would come out with an income tax of approximately $247,500 so that the government would have a basis of seizing this money, isn't that the blunt fact? A. That would be part of it. My position is to protect the government. Q. I want an answer, yes or no, Mr. Vita. Isn't that the blunt fact? A. Yes.
 
 
 [254]
 F.Supp. at 474
 See Lucia v. United States, 5 Cir. (en banc), 1973, 474 F.2d 565 for a discussion of excessive and arbitrary computations of the federal excise tax on wagering and the possibility of a judicial remedy.
 Section 443(a) provides:
 A return for a period of less than 12 months (referred to in this section as 'short period') shall be made under any of the following circumstances:
 (3) Termination of taxable year for jeopardy.-- When the Secretary or his delegate terminates the taxpayer's taxable year under section 6851 (relating to tax in jeopardy).
 Arguably the IRS probably could compute the amount of the deficiency owing following a 6851 quick termination from this return, just as the deficiency for a full tax year is computed from the normal return. See 6211, note 8, supra.
 From what the cases reveal, the IRS in practice will not terminate the tax year pursuant to 6851 and then sit back and await a 443(a)(3) short year return by the taxpayer. Given the exigencies which warrant the existence of 6851, the IRS's practice shows that it will generally terminate the tax year, serve notice and make demand for payment, assess the tax and levy on the taxpayer's assets within a fairly short period of time. See Lisner v. McCanless, D.Ariz., 1973, 356 F.Supp. 398, 403, n. 9.
 See Myers, Termination of Taxable Year: Procedures in Jeopardy, 26 Tax L.Rev. 829, 835-38 (1971) for the argument that the resident citizen and non-departing alien are not required to submit a return for the terminated year pursuant to 443(a)(3) because the regulations pursuant to 443(a) and 6851 do not provide a procedure for the filing of such returns. But see O'Dell, Assessments: What Are They-- Ordinary? Immediate? Jeopardy?, 31 N.Y.U.Inst. on Fed.Tax. 1495, 1522 n. 86 (1973).
 Section 6020(b)(1) provides that:
 If any person fails to make any return (other than a declaration of estimated tax required under section 6015 or 6016) required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary or his delegate shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
 Thus if the IRS believes that it needs a return in order to determine a deficiency and if the 6851 quick termination taxpayer fails to provide one pursuant to 443(a)(3) the IRS is authorized to provide one itself.
 
 
 [29]
 The collection of the tax due following a 6851 termination may be stayed pending expiration of the normal tax period if the taxpayer in fact furnishes a bond equal to the amount assessed. 6851(e), see note 44, infra
 
 
 [30]
 See note 20, supra
 
 
 [31]
 26 U.S.C.A. 6851
 (d) Departure of alien.-- Subject to such exceptions as may, by regulations, be prescribed by the Secretary or his delegate--
 (1) No alien shall depart from the United States unless he first procures from the Secretary or his delegate a certificate that he has complied with all the obligations imposed upon him by the income tax laws.
 (2) Payment of taxes shall not be enforced by any proceedings under the provisions of this section prior to the expiration of the time otherwise allowed for paying such taxes if, in the case of an alien about to depart from the United States, the Secretary or his delegate determines that the collection of the tax will not be jeopardized by the departure of the alien.
 
 
 [32]
 26 U.S.C.A. 6501. Limitations on assessment and collection
 (a) General rule.-- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 
 
 [33]
 In addition to reliance on 6211 and the current regulations, Judge Kaufman examined 273 of the 1926 Revenue Act (a predecessor of 6211) and the applicable regulations and concluded:
 As the 1926 Regulations pointed out, section 273 recognized two classes of cases: (1) 'where the taxpayer makes a return showing some tax liability,' and (2) 'where the taxpayer (either) makes a return showing no tax liability or * * * fails to make a return.' In the second case, 'the deficiency is the amount determined to be the correct amount of the tax.' Regulation 69, at 226 (Article 1231). This construction covers the case of a jeopardy assessment pursuant to the termination of the taxpayer's taxable years. Upon the termination, the tax becomes immediately due and payable (6851 and its predecessors) and, if an immediate assessment is made, the 'amount determined to be the correct amount of the tax'-- i.e., the amount assessed-- is the deficiency. Thus, whatever ambiguity is present in the statutes themselves was seemingly resolved against the Government's present position, by its own construction at the most relevant time, i.e., immediately after the 1926 statute was enacted.
 
 
 [301]
 F.Supp. at 1275
 
 
 [34]
 See Rambo, supra, 492 F.2d at 1064
 Clearly, the I.R.S. has imposed a tax and just as clearly the taxpayer has denied that he owes that amount by refusing either to pay the imposed tax or to file a return. Consequently, the tax imposed . . . became the deficiency.
 
 
 [35]
 See note 24, supra
 
 
 [36]
 The earliest predecessor of 6851 was 250(g) of the Revenue Act of 1918. Section 6861 is a descendant of 279(a) of the Revenue Act of 1926. See Schreck, supra, 301 F.Supp. at 1268-1274 for the history of the origin and development of these sections
 
 
 [37]
 In Schreck, Judge Kaufman points out that when first enacted 250(g) (6851) may have been dependent on 3176 (a general assessment authority provision) for assessment authority. When the deficiency notice procedure and the right to petition the Board of Tax Appeals for a redetermination prior to payment was enacted in 1926; the general assessment authority in both ordinary and jeopardy situations was created. Section 274(a) (6112(a) and 6213(a)) of the Revenue Act of 1926 specifically listed the exceptions to the deficiency notice requirement. Section 279 and 282 (6871) were specifically listed while 6851 was not mentioned. From this, Judge Kaufman inferred:
 Congress seemed to be saying to the IRS: Before the 1926 Act, you could use the predecessor of section 6851 to terminate the taxable year and accelerate the due date of payment, but to assess you had to use the general authorizing statute. Now, in the 1926 Act, you may still use the predecessor of section 6851 for the same purposes as before, but to assess you must utilize the statute authorizing jeopardy assessments, i.e., the predecessor of section 6861.
 
 
 [301]
 F.Supp. at 1273
 
 
 [38]
 Both the taxpayer and the Government could pursue a refund suit in the District Court if dissatisfied with the Board of Tax Appeals decision. See Revenue Act of 1924, 274(b) and 279(b)
 
 
 [39]
 Comment, Jeopardy Assessment: The Sovereign's Stranglehold, 55 Geo.L.J. 701, 704 (1967)
 
 
 [40]
 Gould, Jeopardy Assessments When They May Be Levied and What To Do About Them, 18 N.Y.U.Inst. on Fed.Tax. 937 (1960)
 
 
 [41]
 See Comment, note 39, supra at 704
 
 
 [42]
 See Rambo, supra, 492 F.2d at 1064-1065
 
 
 [43]
 See note 21, supra and accompanying text
 
 
 [44]
 26 U.S.C.A. 6851(e) provides:
 Payment of taxes shall not be enforced by any proceedings under the provisions of this section prior to the expiration of the time otherwise allowed for paying such taxes if the taxpayer furnishes, under regulations prescribed by the Secretary or his delegate, a bond to insure the timely making of returns with respect to, and payment of, such taxes or any income or excess profits taxes for prior years.
 26 U.S.C.A. 6863 provides:
 (a) Bond to stay collection.-- When a jeopardy assessment has been made under section 6861 or 6862, the collection of the whole or any amount of such assessment may be stayed by filing with the Secretary or his delegate, . . . a bond in an amount equal to the amount as to which the stay is desired, conditioned upon the payment of the amount (together with interest thereon) the collection of which is stayed, at the time at which, but for the making of the jeopardy assessment, such amount would be due. Upon the filing of the bond the collection of so much of the amount assessed as is covered by the bond shall be stayed . . ..
 (b) Further conditions in case of income, estate, or gift taxes.-- In the case of taxes subject to the jurisdiction of the Tax Court--
 (1) Prior to petition to Tax Court.-- If the bond is given before the taxpayer has filed his petition under section 6213(a), the bond shall contain a further condition that if a petition is not filed within the period provided in such section, then the amount, . . . will be paid on notice and demand at any time after the expiration of such period . . ..
 (2) Effect of Tax Court decision.-- The bond shall be conditioned upon the payment of so much of such assessment (collection of which is stayed by the bond) as is not abated by a decision of the Tax Court which has become final . . ..
 
 
 [45]
 See Gould, supra, note 40, at 944-45
 
 
 [46]
 See Schreck v. United States, 301 F.Supp. at 1279
 
 
 [47]
 See Kimmel v. Tomlinson, S.D.Fla., 1957, 151 F.Supp. 901, 902
 
 
 [48]
 See note 17, supra
 
 
 [49]
 26 U.S.C.A. 6861(g)
 (g) Abatement if jeopardy does not exist.-- The Secretary or his delegate may abate the jeopardy assessment if he finds that jeopardy does not exist. Such abatement may not be made after a decision of the Tax Court in respect of the deficiency has been rendered or, if no petition is filed with the Tax Court, after the expiration of the period for filing such petition. The period of limitation on the making of assessments and levy or a proceeding in court for collection, in respect of any deficiency, shall be determined as if the jeopardy assessment so abated had not been made, except that the running of such period shall in any event be suspended for the period from the date of such jeopardy assessment until the expiration of the 10th day after the day on which such jeopardy assessment is abated.
 
 
 [50]
 See Treas.Reg. 301.6861-1(f)(3) and Rev.Proc. 60-4. See also Gould, supra note 40, at 945-46; Hochman and Tack, Jeopardy Assessments-- A System In Jeopardy, 1967 Taxes 418, 427-29
 
 
 [51]
 See 6863, note 18, supra
 
 
 [52]
 The Government argues that a deficiency does not exist following a 6851 termination because the taxpayer's normal tax period has not yet expired. This might suggest that a deficiency notice would properly issue at the end of the ordinary tax period allowing the taxpayer to petition the Tax Court for a redetermination at that time. The IRS apparently does not reach that conclusion, however. Indeed, in Irving v. Gray, supra, where the Government position was sustained, the IRS used 6851 to quick terminate a tax year which had already expired. The effect of the quick termination was to accelerate the due date for the payment of the taxes
 As Judge Frank Kaufman observed in Schreck, unless 6861 requires the issuance of the deficiency notice the Government may be able to order a quick termination pursuant to 6851, freeze the taxpayer's assets, and still withhold the issuance of a deficiency notice (and access to the Tax Court) indefinitely since the IRS ordinarily has three years in which to issue a deficiency notice, six years if the taxpayer omits greater than 25% Of property includable in gross income and no time limitation whatsoever if no return is filed. 26 U.S.C.A. 6501(a), (e)(1), and (c)(3) respectively. See Lucia v. United States, 5 Cir. (en banc), 1973, 474 F.2d 565.
 Although the existence of these extended time periods in which the Government may determine a deficiency might not be too burdensome to the ordinary taxpayer, the pressures inevitably are much greater on the jeopardy taxpayer whose assets have been immobilized pursuant to 6851.
 
 
 [53]
 Flora v. United States, 1960, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623
 
 
 [54]
 26 U.S.C.A. 6532. Periods of limitation on suits
 (a) Suits by taxpayers for refund.--
 (1) General rule.-- No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.
 
 
 [55]
 In Irving, supra, the Second Circuit reasoned that:
 The taxpayers are not without remedy, however, for they could have had their complaint of an overpayment heard in the district court below if they had filed full-year returns reporting overpayments of tax; they could have commenced plenary refund actions six months after filing the returns. Treas.Reg. 301.6402-3(b) (1958); Int.Rev.Code of 1954 7422(a) & 6532(a).
 479 F.2d at 24.
 The Court further stated that the full payment rule of Flora would be inapplicable to the 6851 taxpayer since no deficiency had yet been determined. 479 F.2d at 25 n. 7. Even if Flora did not apply, however, a delay of at least six months is inherent in the remedy.
 Of course this argument advanced there and here by the Government and embraced by Irving was in response to taxpayer's contention of unconstitutionality-- a claim we have no reason to assay. Under no stretch of the imagination was the Second Circuit suggesting either legal or economic equality between (i) prepayment Tax Court and (ii) post payment suit for refund. To the likely economic impossibility of securing means by which to pay even by the optional use of the return as a claim, there is still a 6 months delay plus the time between 6851 quick termination seizure and the end of the taxpayer's normal tax year (here from July 19, 1969 to Dec. 31, 1969).
 
 
 [56]
 It is particularly important that the taxpayer be permitted to obtain a prompt adjudication on the question of tax liability since under either 6851 or 6861 it will be difficult if not impossible for the taxpayer to ever obtain judicial review of the determination that jeopardy exists. This Court has held that the determination of jeopardy under 6861 is within the sole discretion of the Commissioner and not subject to judicial review. Lloyd v. Patterson, 5 Cir., 1957, 242 F.2d 742; 9 Mertens 49.145
 However, recently some courts have indicated that the District Director's determination of jeopardy under 6851 can be scrutinized to determine whether there was any evidence whatsoever to support the conclusion that the taxpayer tended to do any of those specified actions which would imperil the collection of the revenue. See United States v. Bonaguro, E.D.N.Y., 1968, 294 F.Supp. 750. Cf. Rinieri v. Scanlon, S.D.N.Y., 1966, 254 F.Supp. 469.
 For the argument that the District Director's decision on the issue of jeopardy should be subjected to judicial review, see Hochman and Tack, note 50, supra at 430-31; O'Dell, note 28, supra at 1510-11; Comment, note 39, supra at 723-33; Kaminskey, Administrative Law and Judicial Review of Jeopardy Assessments Under The Internal Revenue Code, 14 Tax L.Rev. 545 (1959).
 Nor can the taxpayer realistically hope to challenge a 6851 termination with an ordinary injunction suit. Although 7421 (note 6, supra) bars injunctions against the assessment or collection of taxes, the Supreme Court has developed an extremely narrow exception to the rule. Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. In Enochs v. Williams Packing & Nav. Co., 1962, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292, 296, the Supreme Court held that the taxpayer may not obtain an injunction against the assessment or collection of revenue unless he can show that (1) 'It is clear that under no circumstances could the Government ultimately prevail' (2) and 'equity jurisdiction otherwise exists'-- that is there must be (a) irreparable injury and (b) no adequate remedy at law. These strictures continue in the very recent cases of Bob Jones University v. Simon, 1974, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496; Alexander v. 'Americans United' Inc., 1974, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518.
 Sitting en banc in Lucia v. United States, 5 Cir., 1973, 474 F.2d 565 at 573 we held that a taxpayer is entitled to an injunction against the collection of tax pursuant to a jeopardy if he can show that the 'assessment is entirely excessive, arbitrary, capricious, and without factual foundation, and equity jurisdiction otherwise exists.'
 And that is precisely what this Court did in Willits (see note 1, supra) in condemning in stringent terms the conduct of the IRS as aiders to narcotics officers in a 6851 quick termination.
 
 
 [57]
 In construing 6871 (the bankruptcy assessment provision) the Ninth Circuit and the Tax Court have suggested that problems involving the equal protection principle inherent in the due process clause of the Fifth Amendment might arise if all taxpayers except those subjected to bankruptcy proceedings were permitted to litigate liability prior to payment. Jamy Corp. v. Riddell, 9 Cir., 1964, 337 F.2d 11, cert. denied, 1965, 380 U.S. 953, 85 S.Ct. 1085, 13 L.Ed.2d 970; John V. Prather, 1968, 50 T.C. 445; Pearl A. Orenduff, 1968, 49 T.C. 329. In reliance on these cases Judge Kaufman observed in Schreck that:
 In essence, the Government asks this Court to hold that Congress has constitutionally authorized the IRS to seize and sell and of a person's property and has also provided that that person has no right to institute any court proceedings, for perhaps longer than three years, in which to litigate the validity of the underlying assessment and the seizure, while at the same time all jeopardy income taxpayers, other than short-year jeopardy income taxpayers, have the right to begin a judicial proceeding within 60 days of the assessment. That proposition on its face of course raises constitutional questions of equal protection and due process.
 
 
 [301]
 F.Supp. at 1281. See also Rambo, supra, 492 F.2d at 1065. As was the case in Schreck our construction of 6851 does not require us to reach any constitutional issues